IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

UNITED STATES OF AMERICA

v.                                          CRIMINAL NO. 2:93-00196

TERRYONTO MCGRIER

MEMORANDUM OPINION AND JUDGMENT ORDER

Pending before the Court are Defendant's motions, brought pursuant to 18 U.S.C. § 3582(c)(2), to reduce his sentence based upon subsequent reductions in the applicable sentencing guideline.  (Docs. No. 311, 329, and 344).  On November 1, 2007, the United States Sentencing Guidelines were amended to reduce by two levels the guidelines in Section 2D1.1 for cocaine base (also known as crack).  Subsequently, the Sentencing Commission amended Section 1B1.10 to make the crack amendment retroactive, effective March 3, 2008.

Thereafter, on November 1, 2010, pursuant to the Fair Sentencing Act of 2010, the United States Sentencing Guidelines were again amended resulting in further reductions in the guidelines in Section 2D1.1 for cocaine base.  These temporary, emergency amendments to the Guidelines took effect on November 1, 2010.  Permanent amendments implementing the Act were promulgated on April 6, 2011, with an effective date of November 1, 2011.  Subsequently, the Sentencing Commission voted to give retroactive effect to the permanent amendments.

Pursuant to a Standing Order, this case was designated for Standard consideration.

The Court has received and considered the original Presentence Investigation Report (PSI), original Judgment and Commitment Order, addenda to the PSI received from the Probation Office, and materials submitted by the parties on this issue. The Court has also considered the applicable factors under 18 U.S.C. § 3553(a), consistent with § 3582(c)(2), and public safety.

At defendant's sentencing,[1] his original guidelines calculations were a base offense level of 36, with a two-level upward adjustment for obstruction of justice, pursuant to U.S.S.G. § 3C1.1, and a further two-level upward adjustment for reckless endangerment during flight, pursuant to U.S.S.G. § 3C1.2, resulting in a total offense level of 40.  With a criminal history category of III, defendant's guideline range was a period of incarceration of 360 months to life.  Defendant was sentenced to life.

The 2007 amendments resulted in a two-level downward adjustment to defendant's base offense level, resulting in a new total offense level of 38.  A offense level of 38 and a criminal

---

[1] The sentencing judge in this matter was the Honorable Charles H. Haden, II.  The matter was reassigned to the undersigned as a result of Judge Haden's death.

history category of III yields an imprisonment range of 292 to 365 months.

The 2011 amendments resulted in a further two-level decrease in defendant's base offense level.  Therefore, his guideline range became 235 to 293 months, based upon a total offense level of 36 and a criminal history category of III.

Acknowledging that defendant is eligible for a sentence reduction, the United States has indicated that it objects to a reduction in the defendant's sentence.

On April 12, 1994, a federal grand jury returned an indictment charging defendant in two counts of a four-count superseding indictment.  Count One charged defendant with conspiracy to distribute cocaine base and heroin, in violation of 21 U.S.C. § 846.  Count Four charged him with the carrying and use of a firearm during and in relation to the commission of a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1). In December of 1994, a jury found defendant guilty on both counts.[2]

As noted above, at his original sentencing, defendant's guideline range was calculated to be 360 months to life and he

_____

[2] Counts One and Four of the superseding indictment correspond to Counts One and Two of the redacted superseding indictment.  The Judgment in a Criminal Case indicates that defendant was found guilty on Counts One and Two of the superseding indictment.

3

was sentenced to life imprisonment.[3]  As to his reasons for imposing a sentence of life, Judge Haden stated that "[o]nly a sentence of life imprisonment could adequately reflect the seriousness of Defendant's conduct.  Society also needs to be protected from this violent offender."  Judge Haden further recommended that defendant "be placed in an institution with the highest level of security."

As part of the offense conduct in this case, on November 21, 1990, law enforcement approached a vehicle driven by McGrier's co-defendant, Jerome Thomas.  A passenger in the vehicle, McGrier exited the vehicle and began firing from a .380 caliber semi-automatic handgun at law enforcement personnel and an informant. After an exchange of gunfire, McGrier and Thomas fled from the scene and a high-speed police chase ensued.  Maintaining speeds in excess of 80 miles per hour during the chase, the car driven by Thomas veered off the road and struck a 19-year-old bicyclist, David Sergent.  Thomas and McGrier continued to flee from police, even after hitting Sergent.  Eventually defendant was apprehended when the car in which he was riding crashed during the chase. McGrier fled from the car crash but was arrested later that evening.  Sergent died that same day as a result of his injuries from the hit and run.

---

[3] Defendant was sentenced to life imprisonment on Count One and five years on Count Two to run consecutive to the sentence imposed on Count One.

At sentencing, defendant received a two-level increase for obstruction of justice, in part, because he threatened several witnesses who testified against him.  According to one witness, McGrier told her that he was going to "cut her head off."

Defendant has had numerous disciplinary problems while incarcerated.  They include:

| | |
|---|---|
| June 13, 1996 | Disruptive Conduct |
| September 10, 1996 | Use of phone/mail without authorization |
| October 5, 1995 | Use of phone/mail without authorization |
| April 22, 1997 | Use of phone/mail without authorization |
| April 17, 1997 | Possessing drugs or drug items |
| July 13, 1997 | Refusing to obey an order and insolent to staff member |
| March 13, 1998 | Fighting with another person |
| June 27, 1998 | Refusing to obey an order and failing to stand count |
| September 14, 1998 | Insolent to a staff member |
| March 20, 1999 | Fighting with another person |
| March 20, 1999 | Assault with serious injury |
| September 15, 1999 | Possessing drugs/alcohol |
| October 17, 1999 | Insolent to staff member |
| February 17, 2000 | Assault with serious injury |
| June 26, 2000 | Insolent to staff member |
| September 1, 2000 | Insolent to staff member |

5

| | |
|---|---|
| January 4, 2001 | Possessing a dangerous weapon and possessing unauthorized item (stamps) |
| February 15, 2001 | Refusing to obey an order and insolent to staff member |
| July 23, 2001 | Fighting with another person |
| January 26, 2002 | Insolent to staff member |
| February 27, 2002 | Indecent exposure |
| January 10, 2003 | Disruptive conduct-inappropriate comments to staff |
| December 20, 2002 | Possessing drugs/alcohol |
| November 16, 2002 | Assault with serious injury |
| May 5, 2003 | Insolent to a staff member |
| July 14, 2003 | Possessing drugs/alcohol |
| September 10, 2003 | Indecent exposure |
| September 26, 2003 | Fighting with another person |
| October 13, 2005 | Use of drugs/alcohol |
| May 20, 2008 | Fighting with another person |
| February 4, 2009 | Assault without serious injury |
| April 13, 2011 | Threatening bodily harm, possessing a hazardous tool, possessing drugs/alcohol, and refusing to take a drug/alcohol test |

Defendant also withdrew from the GED Program and declined to participate in the Drug Education Program.  To his credit,

6

however, defendant has completed a number of educational programs offered by the BOP.

Despite his relatively young age at the time of the offenses of conviction, defendant already had an extensive criminal history.  Rather than go into details, see Paragraph 43 of the PSI, it is fair to say the PSI lays out a conviction and arrest record that can safely be described as violent and demonstrating a reckless disregard for the safety of others.

Under 18 U.S.C. § 3582(c)(2), a defendant "sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission," may have his term of imprisonment reduced if "after considering the factors set forth in section 3553(a) to the extent that they are applicable, [ ] such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  Whether to reduce a sentence and the extent of any such reduction is a matter of the district court's discretion.  See United States v. Smalls, No. 12-6201, 2013 WL 3037658, *1 (4th Cir. June 19, 2013) (citing United States v. Legree, 205 F.3d 724, 727 (4th Cir. 2000)).

In considering whether to reduce a sentence under § 3582, a district court is required to consider the relevant factors listed in 18 U.S.C. § 3553(a), which include:

        (1)  the nature and circumstances of the offense and the
             history and characteristics of the defendant;

7

(2)  the need for the sentence imposed-
    (A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B)  to afford adequate deterrence to criminal conduct;

    (C)  to protect the public from further crimes of the defendant; and

    (D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)  the kinds of sentences available;

(4)  the kinds of sentence and the sentencing range established for-

    (A)  the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines-

        (i)  issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

        (ii)  that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or

    (B)  in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

8

    (5)  any pertinent policy statement-

        (A)  issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

        (B)  that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

    (6)  the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

    (7)  the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).  According to Application Note 1(B) of the guidelines, a court should also consider "the nature and seriousness of the danger to any person or the community that may be posed by a reduction in the defendant's term of imprisonment. . . ."  U.S.S.G. § 1B1.10 n. 1(B).  The guidelines also allow the court to "consider post-sentencing conduct of the defendant that occurred after imposition of the original term of imprisonment in determining: (I) whether a reduction in the defendant's term of imprisonment is warranted; and (II) the extent of such reduction. . . . "  Id.

    Whether to reduce a sentence is within the discretion of the district court.  United States v. Stewart, 595 F.3d 197, 200 (4th Cir. 2010).  "The court is not required to reduce a defendant's

9

sentence, even where the current sentence is above the amended guidelines range." Id.

Consistent with 18 U.S.C. § 3582(c)(2), the court has considered the factors set forth in 18 U.S.C. § 3553(a), as well as the defendant's post-sentencing conduct and public safety, and has determined that the motions for a sentence reduction should be **DENIED**. Public safety considerations, as well as the nature and circumstances of the offense of conviction, weigh against a reduction in sentence in this case. As described in the PSI, defendant has a significant criminal history, one that is marked by violence. Furthermore, the events surrounding the arrest of defendant and his co-defendant show a reckless disregard for the safety of others. As noted above, in an attempt to avoid arrest, defendant fired several rounds from a semi-automatic handgun at law enforcement. Thereafter, defendant fled police and, in the course of his flight, the vehicle in which he was a passenger struck and killed an innocent bystander. The car did not stop after hitting the bystander and, instead, McGrier and his co-defendant continued to lead the police on a high-speed chase. Eventually, the vehicle caught fire and crashed. The nature and circumstances of defendant's conduct show that he is a danger to the public.

Defendant's post-sentencing conduct has done nothing to change the court's conclusion in this regard. Indeed, his prison

record weighs against a sentence reduction on public safety
grounds.  Defendant has been disciplined more than thirty times
while incarcerated and a number of those incidents speak directly
to issues of public safety, including the incidents of possession
of a dangerous weapon, assault with and without serious injury,
fighting, and threatening bodily harm.  Defendant's post-
sentencing conduct demonstrates that he still lacks respect for
the law, remains a danger to the public, and his continued
incarceration is necessary to protect the public from further
crimes of the defendant.

     As a final matter, the court notes that this is not a case
where the sentencing judge was unclear regarding the sentence it
felt was appropriate in this case.  Judge Haden specifically
stated that "[o]nly a sentence of life imprisonment could
adequately reflect the seriousness of Defendant's conduct.
Society also needs to be protected from this violent offender."
Based upon the record at the time of sentencing, the undersigned
agrees that Judge Haden's sentence was appropriate.  Furthermore,
defendant's post-sentencing conduct, as outlined above,
reinforces this court's determination that a sentence of life
imprisonment remains the appropriate sentence in this case.

     For all of the reasons expressed above, the motions for a
sentence reduction are **DENIED**.

The Clerk is DIRECTED to send a copy of this Memorandum Opinion and Judgment Order to defendant, the Federal Public Defender, counsel of record, the United States Marshal for the Southern District of West Virginia, and to the United States Probation Office for forwarding to the Sentencing Commission and Bureau of Prisons.

It is SO ORDERED this 2nd day of July, 2013.

ENTER:

David A. Faber
Senior United States District Judge

12